In re the **MARRIAGE OF Jerry Lee LEDFORD and Cynthia Diane Ledford.**

**Jerry Lee Ledford, Respondent,**

v.

**Cynthia Diane Ledford, Appellant.**

**No. 23231.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 5, 2000.

Lynn E. Heitman, Prairie Village, KS, for appellant.

James L. Bowles, Ozark, for respondent.

CROW, Judge.

Cynthia Diane Ledford appeals from a judgment dissolving her marriage to Jerry Lee Ledford. All four points relied on in her brief aver the trial court erred in awarding her less child support than the Presumed Child Support Amount ("PCSA") calculated by the trial court on Civil Procedure Form No. 14.[1]

The judgment was entered August 23, 1999. The parenting plan[2] incorporated in the judgment granted the parties joint physical custody of their three youngest children.[3] As this court understands the plan, Cynthia[4] is to have physical custody a greater part of the time than Jerry.

A copy of the Form 14 prepared by the trial court appears at the end of this opinion, labeled "Appendage." As shown on the Appendage, the trial court found Cynthia's monthly gross income is $1,899 and Jerry's is $2,833.

Using those incomes, the trial court arrived at a PCSA of $669 per month, the sum on line 12 of the Appendage. However, the trial court found that sum unjust or inappropriate. With commendable thoroughness, the trial court set forth the reasons for that finding in the judgment.

One of those reasons was that if Jerry paid Cynthia $669 per month, Cynthia "would have more than 61% of the available net income of the parties and [Jerry] would be left with just over 38% of the available net income."[5] For that reason

---

1. The version of Form 14 in force when the trial court entered the judgment appealed from is the version in Missouri Court Rules, Vol. I (West Group 2000) pp. 403–21. It took effect October 1, 1998.

2. See §§ 452.310.7 and 452.375.9, RSMo Cum.Supp.1998.

3. The judgment contained a finding that the eldest of the parties' four children was emancipated. That finding is unchallenged in this appeal.

4. For brevity and clarity, this opinion henceforth refers to the parties by their respective forenames. No disrespect is intended.

5. The trial court prepared an "Income Analysis" in which the court calculated each party's "net monthly income" by deducting from each party's monthly gross income the amounts withheld for United States income tax, Social Security, Medicare, and Missouri income tax. That exercise produced a "net monthly income" (before child support) of $1,607.98 for Cynthia and $2,101.43 for Jerry. Adding $669 child support to Cynthia's "net monthly income" would give her an

and others, the trial court awarded Cynthia $400 per month child support.

Cynthia's first point relied on:

"The Trial Court erred and abused its discretion in its arbitrary and unreasonable award of child support to [Cynthia], in that it considered an irrelevant factor, i.e., the net available income of the parties after the award of support, to rebut the presumed correct child support amount calculated pursuant to the formula mandated in Missouri Supreme Court Rule 88.01; and by rejecting the presumed child support amount without credible evidence in the record and against the logic of the circumstances."

The version of Rule 88.01 in force when the trial court entered the judgment is the version in Missouri Court Rules, Vol. I (West Group 2000) p. 359. It took effect July 1, 1998, and reads:

"(a) When determining the correct amount of child support, a court ... shall consider all relevant factors, including all relevant statutory factors.

(b) There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded in any judicial ... proceeding. Unless a request is filed pursuant to Rule 73.01(a)(3), a written finding or a specific finding on the record by the court ... that the child support amount under a correctly calculated Form No. 14, after consideration of all relevant factors, is unjust or inappropriate shall be sufficient in a particular case to rebut the presumption that the amount of child support so calculated is correct." [6]

■ In adjudicating Cynthia's claims of error, this court applies the standard of review from *In re the Marriage of Gerhard*, 985 S.W.2d 927 (Mo.App. S.D.1999). There, this court said: "A child support provision will be upheld unless the trial court abused its discretion or erroneously applied the law. . . . An appellate court will not substitute its judgment for that of the trial court on whether the presumed child support amount was unjust or inappropriate providing there is credible evidence to support the trial court's beliefs. . . . An abuse of discretion will be found only where the trial court's ruling is clearly against the logic of the circumstances or is arbitrary or unreasonable." *Id.* at 930[4–8].

Cynthia recognizes that Rule 88.01(a), quoted earlier, requires a trial court, in determining child support, to consider all relevant factors, including all relevant statutory factors (*see* § 452.340 .1, RSMo-Cum.Supp.1999). However, Cynthia maintains the "net monthly income" calculated by the trial court [7] is not a relevant factor, as neither Form 14 nor the directions for its use allow a trial court, in setting child support, to (a) add the PCSA to the income of the parent receiving support, or (b) deduct the PCSA from the income of the parent paying support. In Cynthia's words: "Net income available to the respective parties, after considering child support as income, is not a relevant factor."

■ This court agrees that the amount of money that would be available to Cynthia each month (after receiving the PCSA) and the amount of money that would be available to Jerry each month (after paying the PCSA) do not, either separately or together, constitute a relevant factor to be considered in determining whether the PCSA is unjust or inappropri-

"available net income" of $2,276.98, while deducting $669 from Jerry's "net monthly income" would leave him an "available net income" of $1,432.43.

**6.** Rule 73.01, referred to in Rule 88.01(b), was amended effective January 1, 2000. There is no subparagraph "(3)" in paragraph

"(a)" of the current version of Rule 73.01. The provision regarding requests for findings in former Rule 73.01(a)(3) now appears in Rule 73.01(c).

**7.** Footnote 5, *supra*.

ate. A finding that the PCSA on line 12 of the Appendage ($669) is unjust or inappropriate based *solely* on the fact that Cynthia would end up with more than 61 percent of the parties' "available net income" and Jerry would be left with just over 38 percent would be a misapplication of Rule 88.01(b) and Form 14.

However, a party's "available net income," together with one or more relevant factors, might warrant a finding that the PCSA is unjust or inappropriate. For example, § 452.340.1 lists various relevant factors, including the financial needs of the parents. If a parent paying support has extraordinary financial needs (perhaps because of a chronic physical malady), that factor, coupled with his or her "available net income," could warrant a finding that the PCSA is unjust or inappropriate.

Here, there is no indication that Jerry has extraordinary financial needs. Consequently, a finding that the PCSA is unjust or inappropriate merely because Jerry would be left with just over 38 percent of the parties' "available net income" would be an erroneous application of the law. Had the trial court rejected the PCSA for that reason alone, this would be an easy appeal to decide.

The difficulty confronting this court is that the trial court gave several other reasons for finding the PCSA unjust or inappropriate. One such reason was that the judgment requires Jerry to pay part of the cost of weekly "counseling services" for one of the unemancipated children.

The trial court imposed that requirement on Jerry after finding the counseling services cost $60 per week. Half that amount is paid by "medical insurance"

maintained by Jerry.[8] The trial court ruled Jerry should pay half the uninsured amount, i.e., $65 per month.[9] The $65 is listed on line 6.d of the Appendage as "Uncovered Medical Expenses." [10]

Line 10 of the Appendage gives Jerry a $135 "Credit for Additional Child Rearing Costs." The $65 on line 6.d is one of the components of the $135 credit. The $135 credit, combined with the $112 credit on line 11 of the Appendage (discussed *infra* ), reduces Jerry's child support obligation from $916 (line 9) to the PCSA, $669 (line 12).

Cynthia's second point relied on:

"The Trial Court erred and abused its discretion by finding that the presumed child support amount is rebutted by the fact that [Jerry] will be paying one half of the children's extraordinary medical expenses, when [Jerry] had already been given a Form 14 credit for these very expenses on lines 6(d) and 10 of the Court's own Form 41[sic] calculation of the presumed correct child support amount; and as no credible evidence appears in the record to support rebuttal of the guideline credit for extraordinary medical expenses, said rebuttal being arbitrary, unreasonable and against the logic of the circumstances."

In support of her second point, Cynthia cites *Short v. Short*, 947 S.W.2d 67 (Mo. App. S.D.1997). There, the trial court ordered the father to pay eighty percent of "any uninsured medical expenses incurred for his children," *id.* at 69, and simultaneously listed $60 per month as "uninsured extraordinary medical expenses" on line 4.d of its Form 14.[11] *Id.* at 70. This court held:

8. Line 6.c of the Appendage shows Jerry pays $56 per month for the insurance. The judgment orders him to "maintain medical coverage" on the unemancipated children.

9. This court infers the trial court arrived at the $65 figure by multiplying half of the uninsured weekly amount ($15) by 52 and dividing the result ($780) by 12.

10. Line 6.d of the version of Form 14 in force when the trial court entered the judgment (*see* footnote 1, *supra* ) is denominated "Uninsured extraordinary medical costs." This court infers the trial court meant line 6.d on the Appendage to correspond to line 6.d of Form 14.

11. This court divines that the version of Form 14 in force when the trial court entered the judgment in *Short* was the version in Missouri

"The trial court could craft its judgment to require that [the father] pay his share of '[u]ninsured extraordinary medical expenses' as defined by the instructions for line 4(d) of Form 14 and then conclude that the resulting child support amount was appropriate. Alternatively, the trial court could find the Form 14 calculation as it stands is unjust or inappropriate and then require [the father] to pay uninsured medical expenses. Under the latter approach, [the father] would be entitled to a credit against his obligation for uninsured medical expenses. The amount of credit would be his share of line 4(d) of Form 14. Only one of these approaches should be used. No basis exists for twice imposing on [the father] the obligation to pay any uninsured medical expenses[.]"

*Id.* (footnote omitted).

■ Cynthia argues that the trial court here "twice bestowed a benefit upon [Jerry], by first crediting him with ½ of the [uninsured part of the counseling] expense and then finding this responsibility additionally unjust and rebutting the presumed child support [amount] by virtue of same." Cynthia proclaims: "Pursuant to *Short* ... the court may not impose the same obligation twice upon husband. It follows that the court should not bestow the same credit upon him twice." Consequently, reasons Cynthia, the trial court considered an irrelevant factor when it used Jerry's obligation to pay half the uninsured cost of the counseling to justify a reduction in the $669 PCSA.

Jerry responds that because Cynthia did not request findings per Rule 73.01(c), a finding by the trial court on the record that the PCSA on line 12 of the Appendage was unjust or inappropriate was sufficient under Rule 88.01(b) to rebut the presumption that said amount was the proper amount to award. Jerry correctly points

out that the trial court made such a finding in the judgment.

Jerry also directs this court's attention to the caveat in the directions for use for line 6.d of Form 14. The caveat reads:

"A finding by the court ... that the presumed child support amount is unjust or inappropriate is not necessary where the parent obligated to pay support is also ordered to pay any percentage of the unreimbursed medical or dental expenses of the children who are the subject of the proceeding."

As this court understands Jerry's brief, he believes that because the trial court ordered him to maintain medical insurance coverage on the unemancipated children and pay half of the uninsured portion of the cost of the counseling services, the caveat eliminated the requirement that the trial court, before awarding less child support than the PCSA on line 12, find said amount unjust or inappropriate.

This court disagrees. The caveat first appeared in the directions for use accompanying the current version of Form 14, which took effect October 1, 1998. This court suspects the purpose of the caveat was to override the holding in cases such as *Weiss v. Weiss*, 954 S.W.2d 456, 458–59[2] (Mo.App. E.D.1997), that before a trial court could order a parent to pay a percentage of the children's uninsured medical expenses *plus* the PCSA, the court had to find the PCSA unjust or inappropriate.

This court agrees with Cynthia that the trial court erred when it treated Jerry's judgment-imposed duty to pay half of the uninsured portion of the counseling cost as a relevant factor in determining whether the PCSA on line 12 of the Appendage was unjust or inappropriate. Jerry's obligation had already been taken into account in the trial court's calculation of the PCSA. The $65 on line 6.d of the Appendage is the

Rules of Court (1994) pp. 384–94. Line 4.d in that version corresponds to line 6.d in the

current version.

amount the trial court found Jerry would expend in paying his half of the uninsured portion of the counseling cost.

Applying the rationale of *Short*, 947 S.W.2d at 70, this court holds that inasmuch as the $65 was included in calculating the PCSA on the Appendage, the trial court could not properly consider Jerry's duty to pay half of the uninsured portion of the counseling cost as a relevant factor in deciding whether the PCSA was unjust or inappropriate.

■ Another reason given by the trial court for finding the PCSA unjust or inappropriate was that Jerry would have the parties' youngest child "more than 50% of the time." [12] Cynthia's third point relied on:

> "The Trial Court erred and abused its discretion by finding that the presumed child support amount was rebutted by the fact that [Jerry] would have one of the three children with him approximately one-half of the time, as this circumstance was already taken into account and credited to [him], in the Form 14 visitation credit; and, no credible evidence as to the expenses to be incurred by [him] appears in the record, rendering the Court's order arbitrary, unreasonable and against the logic of the circumstances."

The "Form 14 visitation credit" referred to in the above point is the $112 on line 11 of the Appendage.

The directions for use for line 11 of Form 14 include a table based on "the number of periods of overnight visitation or custody per year awarded to and exercised by the parent obligated to pay support." The largest adjustment shown on the table—ten percent—is for 92 to 109 "overnight periods." The directions further provide that if the parent obligated to pay support is awarded periods of over-

night visitation or custody for more than 109 days per year, the adjustment may be greater than ten percent.

The Appendage shows the $112 adjustment on line 11 was "[b]ased upon 130.00 days per year." That is consistent with a finding in the judgment that under the parenting plan, Jerry "will be exercising more than 130 days visitation with the minor children per annum."

Jerry maintains that because the directions for use for line 11 allow a greater credit than ten percent where (as here) the parent paying child support is awarded overnight visitation or custody for more than 109 days per year, the trial court did not err in considering, as a factor for awarding less child support than the PCSA, the fact that Jerry will have all three unemancipated children 130 days per year and the youngest child more than half the year.

The flaw in Jerry's argument is that line 11 of the Appendage clearly shows the $112 adjustment is based on 130 days per year. Consequently, those days were taken into account in calculating the PCSA on the Appendage.

Cynthia argues—as she did in her second point—that the trial court "bestowed twice upon [Jerry] credit for the same obligation" when it allowed the credit on line 11 and also treated Jerry's periods of overnight visitation as a factor in finding the PCSA unjust or inappropriate. Cynthia further asserts there is no evidence regarding Jerry's expenses for the youngest child when she is with him. Jerry does not argue otherwise.

This court holds the trial court, having allowed Jerry the $112 credit on line 11 of the Appendage, could not properly consider, as a factor in finding the PCSA unjust or inappropriate, the number of days (and

---

**12.** As reported earlier in this opinion, this court's understanding of the parenting plan incorporated in the judgment is that it allows Cynthia to have physical custody of the three unemancipated children a greater part of the time than Jerry. Evidently, the trial court believed the youngest child would nonetheless be in Jerry's physical custody more than half the time. Cynthia does not challenge that assumption.

nights) the three youngest children would be with him. Furthermore, as there was no showing of Jerry's expenses for the youngest child when she is with him beyond 130 days per year, there was no evidentiary support for treating that factor as a reason for finding the PCSA unjust or inappropriate.

Cynthia's final point complains that the trial court erred in its findings regarding (1) the parties' respective incomes, and (2) the amount of Cynthia's "allowable work related day-care expenses."

■ The trial court's findings on those subjects were based on its evaluation of the evidence and the parties' credibility. A trial court may believe all, part, or none of the testimony of any witness. *Gerhard,* 985 S.W.2d at 930[3]. This court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the judgment. *Id.* at [2]. The evidence the trial court believed was sufficient to support its findings. Further discussion of Cynthia's fourth point would have no precedential value. The point is denied.

For the reasons set forth earlier, this court holds the trial court erred in treating the factors identified in Cynthia's first three points as relevant factors in finding the PCSA on line 12 of the Appendage unjust or inappropriate. That holding requires this court to determine what relief Cynthia should receive.

■ In oral argument, Cynthia's lawyer told this court that had the trial court awarded Cynthia the PCSA on line 12 of the Appendage ($669), Cynthia would not have appealed. One possible disposition would be for this court to exercise its authority under Rule 84.14 and award Cynthia that amount, retroactive to the date of the judgment. However, for the reason set forth below, this court rejects that option.

In the judgment, the trial court listed numerous reasons for rejecting the PCSA. Cynthia has attacked only three in this appeal. This court cannot discern from the record what weight the trial court gave those three, but this court assumes the trial court gave each of them some weight and also gave each of the other reasons some weight.

The $400 per month child support awarded Cynthia by the trial court is slightly less than sixty percent of the PCSA ($669). This court cannot assume the trial court would have awarded $669 had the trial court excluded from its consideration the three reasons attacked by Cynthia.

This court therefore reverses the portion of the judgment awarding child support and remands this case to the trial court for redetermination of the child support Cynthia shall receive. On remand, the trial court shall not consider, as relevant factors in deciding whether the PCSA is unjust or inappropriate, the three factors attacked by Cynthia in this appeal.

In all other respects, the judgment is affirmed. Costs of this appeal are taxed against Jerry.

PREWITT and GARRISON, JJ., concur.

APPENDAGE

FORM NO. 14   PRESUMED CHILD SUPPORT AMOUNT

Number of Children = 3

|  | CUSTODIAL PARENT | NON-CUSTODIAL PARENT | COMBINED |
|---|---|---|---|
| 1. Monthly Gross Income: | 1899.00 | 2833.00 | |
| 2. Adjustments: | | | |
| a. Other Child Support Obligations: | ( 0.00 ) | ( 0.00 ) | |
| b. Other Spousal Support Obligations: | ( 0.00 ) | ( 0.00 ) | |
| c. Other Child Support Responsibility: | ( 0.00 ) | ( 0.00 ) | |
| 3. Adjusted Gross Income: | 1899.00 | 2833.00 | 4732.00 |
| 4. Share of Income | 40.10% | 59.90% | |
| 5. Basic Child Support Amount | | | 1115.00 |
| 6. Additional Child Rearing Costs | | | |
| a. Daycare: Child Care Costs: 260.00 Less credit of 60.00 | 200.00 | | |
| b. Noncustodial Daycare: | | 0.00 | |
| c. Health Insurance Costs: | 0.00 | 56.00 | |
| d. Uncovered Medical Expenses: | 65.00 | 65.00 | |
| e. Extraordinary Expenses: | 14.00 | 14.00 | |
| 7. Total Additional Child Rearing Expenses: | 279.00 | 135:00 | |
| 8. Total Combined Child Support Costs: | | | 1529.00 |
| 9. Each Parent's Child Support Obligation: | 613.00 | 916.00 | |
| 10. Credit for Additional Child Rearing Costs: | | ( 135.00 ) | |
| 11. Credit for sums expended by non-custodial parent during custodial periods (Line 5 multiplied by 10.00%) Based upon 130.00 days per year | | ( 112.00 ) | |
| 12. PRESUMED CHILD SUPPORT: | | 669.00 per month -or- 153.96 per week | |